# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* H. L. SANDERS, Minor.

UNPUBLISHED
April 6, 2017

No. 334028
Macomb Circuit Court
Family Division
LC No. 2014-000074-NA

Before: M. J. KELLY, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her minor child pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). For the reasons stated in this opinion, we affirm.

## I. STATUTORY GROUNDS

## A. STANDARD OF REVIEW

Respondent argues that the trial court clearly erred by finding clear and convincing evidence to support the statutory grounds for termination. We review the court's findings of fact for clear error. MCR 3.977(K); *In re Sours*, 459 Mich 624, 633; 593 NW2d 520 (1999). To terminate parental rights, the Department of Health and Human Services (the Department) must establish by clear and convincing evidence the existence of at least one of the statutory grounds for termination found in MCL 712A.19b(3). *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003). A finding of fact is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake was made. *Id*. at 209-210. Further, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appear before it. MCR 2.613(C); MCR 3.902(A); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

## B. ANALYSIS

Respondent first argues that the trial court erred in finding clear and convincing evidence to terminate her parental rights under MCL 712A.19b(3)(c)(*i*), which provides:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

-1-

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Respondent concedes that more than 182 days have elapsed since the initial dispositional order was issued; however, she argues that the condition leading to adjudication was rectified or could be rectified within a reasonable time considering her child's age. We disagree.

The child came into care after respondent left him at her sister's home in January 2014 without any medications, provisions, or indication about when she would return for him. The child was "medically fragile" with a diagnosis of a severe heart condition and failure to thrive. He was two-years old at the time. By February 2014, respondent told the Department that she could not provide for her child because she lacked employment and stable housing. Respondent pleaded no contest to the allegations in the petition and the court took jurisdiction over the child.

The parent/agency agreement required that respondent take a psychological evaluation and participate in counseling, parenting classes, and substance abuse support services, including a CARE assessment and random drug screens. It also required respondent to maintain contact with the agency, participate in visitation, find employment, obtain a safe and suitable home, and engage in law-abiding behaviors. Respondent was on several medications for bipolar and mood disorders, such as Norco, Adderall, Hydrocodone, and Depakote.

Initially, respondent was quite resistant to working with her caseworker. She refused to meet with her caseworker and sent inappropriate and insulting texts to her. Further, respondent refused to take a drug screen, refused to sign any releases, and threw a tantrum outside of her sister's home because her sister would not permit respondent's boyfriend—who was not supposed to accompany respondent to visitations—to come inside during a visitation. At the Family Team Meeting, respondent was disruptive. She yelled and swore at everyone and blamed everyone for her problems. The child had heart surgery in the summer of 2014. Because respondent was not permitted a 24-hour pass, which was given to the foster parents, she refused to visit him in the hospital, even though she could have visited him from 8:00 a.m. to 8:00 p.m.

At the termination hearing, after two years of services geared toward reunification, the trial court found that respondent had complied with the psychological evaluation, completed parenting classes, and had found and maintained employment. However, the record reflects that respondent failed to comply with the recommendation in the psychological evaluation, which strongly recommended individual therapy and substance abuse therapy. Respondent participated in mental health treatment only sporadically, and she switched back and forth between therapy providers. Because her attendance had been so sporadic, none of her various therapists were able to write a report concerning her progress. The Department continued to refer respondent to therapy and assist her with her lapses in insurance, which occurred several times.

Respondent also did not comply with the requirement to take drug screens. Despite knowing that missed drug screens were considered positive, respondent submitted to only 22 out of 49 offered drug screens in 2015. She also tested positive for alcohol on five screens— including when she was at work—even though she knew that she was not allowed to use alcohol with her medications. In addition, she did not always test positive for the prescription

medications that she was supposed to be taking. In particular, her failure to obtain and take Depakote, a mood stabilizer which needed to be taken consistently, was most concerning.

Furthermore, although respondent had found suitable housing, she failed to provide documentation that she was paying the rent and utilities. Therefore, it could not be determined if her housing was stable. Respondent was also sporadic in maintaining contact with her caseworker and continued to be resistant and, at times, inappropriate and aggressive. She had not participated in most of her child's medical appointments, although she was repeatedly instructed to attend and was notified of the appointments. Likewise, she had to be continually instructed to follow through on the child's dental appointments. Although she was usually appropriate during her parenting time visits, her attendance was sporadic. Her unsupervised at-home visitations had been changed back to supervised visitation at the agency because of the domestic violence against her at her home in February 2016, which involved an ex-boyfriend who respondent had claimed was no longer in her life. The police report indicated that he was the "live in roommate." The police report further indicated that the respondent's older 11-year-old son, who was placed in a guardianship, was present in the home at that time.

Under these circumstances, the trial court did not clearly err in finding clear and convincing evidence to support termination under MCL 712A.19b(3)(c)(*i*).

For the same reasons, the trial court did not clearly err in terminating respondent's parental rights under MCL 712A.19b(3)(g) and (j), which provide:

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

A parent's failure to comply with his or her service plan is evidence that the parent will not be able to provide a child with proper care and custody and that the child may be harmed if returned to the parent's home. *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014). Respondent left the child with her sister for over three months with no medicine or provisions because she was not able to provide proper care or custody for him. Moreover, during this case, she failed to comply with the parent/agency agreement. She never addressed her mental health issues through therapy, and she stopped taking the necessary medications to control her bipolar disorder and her mood swings. She failed to provide documentation showing that she was financially maintaining her home. Thus, on this record, there was clear and convincing evidence to support a finding that, without regard to intent, respondent had failed to provide for her child's proper care or custody, and there was no reasonable expectation that she would be able to do so within a reasonable amount of time considering the child's age and how long he had been in foster care. Based on the same facts, there was also clear and convincing evidence to support a

finding that there was a reasonable likelihood, based on respondent's conduct, that her child would be harmed if he was returned to her home. Therefore, the trial court also did not clearly err in finding clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(g) and (j).

## II. BEST INTERESTS

### A. STANDARD OF REVIEW

Respondent also argues that there was insufficient evidence to support the trial court's finding that termination of her parental rights would be in the child's best interests. Respondent specifically disagrees with the trial court's finding that the bond between respondent and the child was not a "parent-child" bond, and she contends that she was in total compliance with the parent/agency agreement. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Laster,* 303 Mich App 485, 496; 845 NW2d 540 (2013).

### B. ANALYSIS

Once the petitioner has established a statutory ground for termination by clear and convincing evidence, the trial court must find that termination is in the child's best interests before it can order termination of parental rights. MCL 712A.19b(5). In making the best-interest determination, the court may consider the parent's parenting ability, *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009), the child's bond to the parent, *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004), the child's safety and well-being, *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011), and whether the parent can provide a permanent, safe, and stable home, *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

In this case, the trial court addressed each pertinent issue concerning best interests and based its decision on the evidence and record before it. Respondent's contention that the trial court clearly erred in finding that the bond between respondent and the child was not a "parent-child bond" is without merit. The evidence showed that the child had told respondent that she was not his "mom" and had also argued with the caseworker that respondent's sister, whom he called "Meemee," was his mom. Certainly there was a bond between respondent and the child because of the numerous visits that he had with her, but clearly he looked to respondent's sister as his primary caretaker and "mom."

Respondent also argues that she "actively engaged in every service . . . immediately upon receiving a referral," and that she was able to provide for the child both emotionally and financially. These arguments are not supported by the record. Respondent had housing, but by failing to produce documentation that she was paying the rent and utilities, she could not demonstrate that she could maintain it. Respondent had employment, but she consistently blamed her employment for missing her drug screens, doctors' appointments, and visitations. Because she had a very demanding schedule that required her to work long hours, it was unlikely that she would be able to maintain her work schedule and take over the care and custody of her

son at the same time. The child needed stability, permanency, and a safe and suitable home that could meet his special needs. He had that with respondent's sister, who desired to adopt him. Respondent had demonstrated that she could not consistently accept the responsibilities or engage in the services necessary for reunification. And after two years, respondent had not fully complied with or benefited from the services provided, had not followed-through on obtaining her medications or insurance or the documentation required to show that she was able to maintain her home, and had not complied with therapy. Under these circumstances, the trial court did not clearly err in finding that a preponderance of the evidence established that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Amy Ronayne Krause